LOURIE, Circuit Judge.
 

 Terry A. Ledford appeals from the final decision of the United States Court of Veterans Appeals dismissing his appeal in part for lack of jurisdiction.
 
 Ledford v. Brown,
 
 No. 95-285, 1997 WL 68114 (Vet.App. Feb. 13, 1997). Because the Court of Veterans Appeals did not err in dismissing his constitutional and statutory claims, we affirm.
 

 BACKGROUND
 

 Ledford served in the Air Force until he was discharged in 1976 due to schizophrenia. In December 1977, the Department of Veterans Affairs’ (DVA’s) Regional Office (RO) in Seattle, Washington granted Ledford a 100% disability rating based on individual unem-ployability. In January 1981, the Seattle RO changed his rating to a 100% schedular rating pursuant to VA Circular 21-80-7, which provided that “[a] 100% schedular evaluation will be assigned if unemployability is directly attributable to a service-connected neuro-psychiatric condition.” The stated purpose of the Circular was to reestablish the DVA’s control over the “many questionable or erroneous grants of individual unemployability.” The rating change amounted in effect to a termination of Ledford’s individual unem-ployability benefits.
 

 In September 1985, Ledford was again examined by the DVA. Because the examiner found that Ledford’s schizophrenia was in partial remission, the Seattle RO reduced his schedular rating to 70%. Ledford objected to this reduction and filed a Notice of Disagreement (NOD) with the Board of Veterans’ Appeals in December 1985.
 
 See
 
 38 U.S.C. § 7105(a) (1994). After several remands for further factual development, the Board in February 1990 confirmed the 70% rating. Ledford continued to disagree and filed another NOD on April 19, 1990. After reassessing the evidence, the Board increased Ledford’s schedular rating to 100% and set the effective date for the increase at April 19,1990.
 

 
 *778
 
 Ledford then filed another NOD in November 1991 alleging that the effective date for the increase should have been set at February 1, 1986 because it was “clear and unmistakable error” (CUE)
 
 [1]
 
 for the Seattle RO to have decreased his rating in 1985. The Board disagreed and confirmed the April 19, 1990 effective date. In 1993, Led-ford again complained about the Seattle RO’s error, which the Board treated as a motion for reconsideration and denied in substance.
 
 [2]
 
 Ledford then appealed to the Court of Veterans Appeals.
 

 Before the court, Ledford challenged,
 
 inter alia,
 
 the 1981 rating decision, which changed his individual unemployability rating to a sehedular rating pursuant to the Circular. Specifically, he claimed that the Circular was invalid because (1) it was neither published in the Federal Register nor subject to notice and comment under the Administrative Procedure Act (APA),
 
 see
 
 5 U.S.C. §§ 552(a)(1), 553 (1994) and 38 C.F.R. § 1.12 (repealed 1997), and (2) the operation of the Circular violated his due process rights under the United States Constitution because it was inconsistent with 38 C.F.R. § 3.343(c) (1997), which generally prescribes that a 100% individual unemployability rating can be reduced only upon proof of employability by clear and convincing evidence, an evidentiary standard Ledford asserts was not met in his case.
 

 The court characterized Ledford’s challenge to the 1981 rating decision as a CUE claim under 38 C.F.R. § 3.105(a) (1997).
 
 [3]
 
 The court then concluded that, because the CUE claim had not been raised before the Board, it lacked jurisdiction over that claim, and dismissed that portion of Ledford’s appeal. Ledford appeals the dismissal to this court.
 

 DISCUSSION
 

 Our jurisdiction to review a decision of the Court of Veterans Appeals is limited by statute:
 

 After a decision of the United States Court of Veterans Appeals is entered in a ease, any party to the case may obtain review of the decision with respect to the validity of any statute or regulation ... or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the Court in making the decision.
 

 38 U.S.C. § 7292(a) (1994); see
 
 also id.
 
 § 7292(c), (d) (vesting jurisdiction over review of Court of Veterans Appeals decisions in this court and setting certain standards for review);
 
 Fugere v. Derwinski,
 
 972 F.2d 331, 334 (Fed.Cir.1992). Our jurisdiction does not extend to challenges either to factual determinations or to the application of the law to the facts of a particular case. 38 U.S.C. § 7292(d)(2). Whether the Court of Veterans Appeals had jurisdiction is a matter of statutory interpretation,
 
 see
 
 38 U.S.C. § 7252 (defining the jurisdiction of the Court of Veterans Appeals), which this court reviews
 
 de novo. Wick v. Brown,
 
 40 F.3d 367, 370 (Fed.Cir.1994).
 

 Ledford argues that his APA and constitutional challenges to the Circular were properly brought before the Court of Veterans Appeals in the first instance and that these claims could not have been brought at the agency level,
 
 i.e.,
 
 before the Seattle RO or the Board of Veterans Appeals, because the agency does not have the power to remedy such challenges. Ledford asserts that DVA regional offices and the Board are bound to follow VA circulars, regardless of their validity, and therefore that challenging the legality of the Circular at the agency
 
 *779
 
 stages of the veterans’ benefits review process would have been futile. Ledford further asserts that his November 1991 NOD was sufficient to confer jurisdiction on the Court of Veterans Appeals even though that NOD addressed neither his disagreement with the 1981 termination of his individual unemploya-bility benefits nor his APA and constitutional challenges to the termination.
 

 
 *778
 
 Previous determinations which are final and binding, including decisions of service connection ..., will be accepted as correct in the absence of clear and unmistakable error. Where the evidence establishes such error, the prior decision will be reversed or amended. For the purpose of authorizing benefits, the rating or other adjudicative decision which constitutes a reversal of a prior decision on the grounds [sic] of clear and unmistakable error has the same effect as if the corrected decision had been made on the date of the reversed decision.
 

 
 *779
 
 The government responds that the Court of Veterans Appeals may review a decision of the Board only if the appeal to the Board was initiated by an NOD directed to the RO determination at issue and filed on or after November 18, 1988.
 
 See
 
 Veterans’ Judicial Review Act of 1988, Pub.L. No. 100-687, § 402, 102 Stat. 4105 (1988) (VJRA);
 
 see also Hamilton v. Brown,
 
 39 F.3d 1574, 1575-77 (Fed.Cir.1994) (summarizing the veterans’ benefits appeals process). The government points out that it is uncontested that Ledford never filed an NOD contesting the validity of the Circular or the termination of his individual unemployability benefits in 1981. Moreover, the government asserts that Ledford cannot base jurisdiction in the Court of Veterans Appeals on his 1991 NOD because that NOD dealt with an entirely different issue,
 
 viz.,
 
 the effective date of his 100% rating, an issue unrelated to his challenge to the Circular’s validity or to the termination of his benefits thereunder. The government further contends that Ledford is incorrect in stating that his APA and constitutional challenges could not have been raised before the agency, and that Ledford must first have allowed the agency to decide whether it committed CUE in order to vest the Court of Veterans Appeals with jurisdiction.
 
 [4]
 

 We agree with the government and the Court of Veterans Appeals that the court lacked jurisdiction to consider Ledford’s APA and constitutional challenges to the termination of his individual unemployability benefits in 1981. The statute that confers jurisdiction upon the Court of Veterans Appeals provides that the court has the “power to affirm, modify, or reverse
 
 a decision of the Board
 
 or to remand the matter as appropriate.” 38 U.S.C. § 7252(a) (emphasis added). Thus, the court’s jurisdiction is premised on and defined by the Board’s decision concerning the matter being appealed.
 
 See id.
 
 § 7252(b) (Court of Veterans Appeal review “shall be on the record of proceedings before the Secretary and the Board.”). However, the Board has never issued a decision concerning the 1981 termination of Ledford’s individual unemployability benefits. Instead, the Board decision from which Ledford appealed dealt exclusively with the propriety of the effective date of the return of his schedu-lar rating from 70% to 100%.
 
 [5]
 
 In short, there was no Board decision for the Court of Veterans Appeals to review concerning the propriety of the termination, and thus the court had no jurisdiction to consider that issue.
 

 Furthermore, Court of Veterans Appeals jurisdiction was lacking for the additional reason that Ledford cannot point to an NOD that expresses disagreement with the termination of his individual unemployability benefits in 1981.
 
 See
 
 VJRA, § 402 (Court of Veterans Appeals jurisdiction limited to eases in which an NOD is filed on or after November 18,1988). An NOD is required to initiate the appellate review process, 38 U.S.C. § 7105(a) (1994); it is defined by regulation as “[a] written communication from a claimant ... expressing dissatisfaction or disagreement with an adjudicative determi
 
 *780
 
 nation by the agency of original jurisdiction and a desire to contest the result.” 38 C.F.R. § 20.201 (1997). Thus, an NOD relates to a specific “adjudicative determination” on a specific date.
 

 Ledford’s 1991 NOD, which expressed disagreement with the agency’s 1990 determination concerning the effective date for the increase in his schedular rating, is insufficient to confer jurisdiction upon the Court of Veterans Appeals over the agency’s 1981 determination which terminated his individual unemplpyability benefits and to which his constitutional and APA challenges relate.
 
 See Barrera v. Gober,
 
 122 F.3d 1030, 1032 (Fed.Cir.1997) (“This court recently held in
 
 Grantham v. Brown
 
 [, 114 F.3d 1156 (Fed. Cir.1997) ] that a veteran’s overall claim, or case, for benefits is comprised of separate issues, and that the Court of Veterans Appeals has jurisdiction to consider an appeal concerning one or more of those issues, provided a[n] NOD has been filed after the effective date of the [VJRA] with regard to the particular issue.”). Ledford had to have presented an NOD specifically challenging the 1981 determination in order to vest jurisdiction in the Court of Veterans Appeals over that determination. While his legal reasoning supporting such a challenge need not appear in the NOD,
 
 see
 
 38 C.F.R. § 20.201 (1997) (quoted
 
 supra
 
 ),
 
 [6]
 
 an NOD must have indicated a disagreement with a specific determination. This did not occur here with respect to the 1981 determination.
 

 Despite the foregoing, Ledford asserts that the agency cannot render a decision concerning the termination of his individual unemployability benefits because he has challenged the propriety of that action on grounds upon which the agency is powerless to act,
 
 viz.,
 
 invalidity of the Circular under the Constitution and the APA. Ledford therefore asserts that the constitutional and APA challenges were properly raised in the first instance before the Court of Veterans Appeals. The government argues that such legal -challenges should be made at the agency level in order to build a factual record or to permit the agency to resolve the dispute on other grounds, if possible. We agree with the government that, while the doctrine of exhaustion of administrative remedies is not jurisdictional,
 
 [7]
 
 Ledford had to first present his constitutional and APA challenges to the agency before presenting them to the Court of Veterans Appeals.
 

 The Supreme Court has stated that “[t]he basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence — to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies.”
 
 Parisi v. Davidson,
 
 405 U.S. 34, 37, 92 S.Ct. 815, 818, 31 L.Ed.2d 17 (1972). The application of the doctrine is “intensely practical” and is to be applied when further agency consideration concerning an issue would further the doctrine’s underlying policies.
 
 Bowen v. City of New York,
 
 476 U.S. 467, 485, 106 S.Ct. 2022, 2082 (1986). Ledford’s assertion that the agency cannot invalidate the Circular does not relieve him of the obligation of presenting his constitutional and APA challenges to the agency. A lack of agency power to provide a remedy concerning issues beyond its charter does not necessarily relieve a claimant from presenting those issues to an agency as part of a challenge to an agency decision. The Supreme Court addressed this point in
 
 Aircraft & Diesel Corp. v. Hirsch,
 
 331 U.S. 752, 772-74, 67 S.Ct. 1493, 1503-04, 91 L.Ed. 1796 (1947). While the facts of
 
 Aircraft & Diesel
 
 are complex, a brief summary will suffice to illuminate the relevance of that case to the instant appeal.
 

 The plaintiff in
 
 Aircraft & Diesel
 
 filed a petition with the United States Tax Court, then an administrative body similar to the
 
 *781
 
 Board of Veterans’ Appeals,
 
 [8]
 
 for a redetermi-nation of plaintiffs tax liability.
 
 Id.
 
 at 758, 67 S.Ct. at 1496. While the proceeding was pending, the plaintiff sued in federal district court for a declaratory judgment that the act under which the plaintiff was taxed was invalid on several constitutional grounds.
 
 Id.
 
 The Court agreed with the district court’s dismissal of the suit,
 
 inter alia,
 
 because the plaintiff failed to exhaust its administrative remedies.
 
 See id.
 
 at 764-74, 67 S.Ct. at 1499-1504. The Court did not believe that the presentation of the constitutional issues to the Tax Court could be avoided:
 

 [I]n this ease the very fact that constitutional issues are put forward constitutes a strong reason for not allowing [a district court suit] to anticipate or take the place of the Tax Court’s final performance of its function. When that has been done, it is possible that nothing will be left of appellant’s claim....
 

 The Tax Court may [likely] decide entirely in appellant’s favor.... For, apart from the questions of constitutionality and of the Tax Court’s power to decide them finally or otherwise, appellant has put forward ... claims of exemption and noneover-age.... And if those claims are well founded ... the Tax Court’s determination of these matters of coverage ... well might render consideration of the constitutional questions by it unnecessary and this cause moot.
 

 Aircraft & Diesel,
 
 331 U.S. at 772-73, 67 S.Ct. at 1503-04 (footnotes and citations omitted);
 
 see also Blitz v. Donovan,
 
 740 F.2d 1241, 1248 (D.C.Cir.1984) (“[The Secretary of Labor argues] that constitutional challenges do not exempt a litigant from exhausting available administrative remedies when pursuit of those remedies may avert the need for constitutional adjudication.... [W]e find substantial support for the Secretary’s position.”);
 
 Darr v. Carter,
 
 640 F.2d 163, 165 (8th Cir.1981) (“Requiring exhaustion of administrative remedies where constitutional issues are raised is also consistent with the goal of efficiency. . Agency action favorable to the claimant may eliminate the need for the courts to pass on the constitutional questions. In the event of unfavorable agency action, the constitutional issues are preserved for timely judicial review.”);
 
 cf. Beard v. General Serv. Admin.,
 
 801 F.2d 1318, 1321 (Fed.Cir.1986) (concluding that the doctrine of exhaustion of administrative remedies did not require presentation of petitioner’s due process challenge to the Merit System Protection Board: resolution of the due process issue did not require agency development of a factual record, the application of agency expertise, or the exercise of administrative discretion, and furthermore would have been futile).
 

 Ledford’s situation is similar to that of the plaintiff in
 
 Aircraft & Diesel
 
 and requires presentation of his constitutional and APA challenges to the agency. Although
 
 Aircraft & Diesel
 
 was concerned with agency consideration of constitutional challenges, we find its reasoning also applicable to the presentation of an APA challenge to the validity of the intra-agency Circular. Agency consideration of Ledford’s constitutional due process challenge and his statutory APA challenge stand on equal footing. In essence, Led-ford’s claim is that his individual unemploya-bility benefits were improperly terminated under the Circular in spite of 38 C.F.R. § 3.343(c). The Board is clearly empowered to determine which law applies to the facts presented by Ledford and to apply that law.
 
 See
 
 38 U.S.C. § 7104(a) (1994) (“Decisions of the Board shall be based on the entire record in the proceeding and upon consideration of all evidence and material of record and
 
 applicable provisions of law and regulation.”)
 
 (emphasis added);
 
 Bowen,
 
 476 U.S. at 485, 106 S.Ct. at 2032 (1986) (“Because of the agency’s expertise in administering its own regulations, the agency ordinarily should be given the opportunity to review application of those regulations to a particular factual context” and exhaustion should not be waived); 38 C.F.R. § 19.5 (1997) (“In the consideration of appeals, the Board is bound by applicable statutes [and] regulations.... The Board is not bound by Department manuals,
 
 *782
 

 circulars,
 
 or similar administrative issues.”) (emphasis added). Had the Board found § 3.343(c) to be applicable, Ledford might have been provided with the remedy he sought, and the need for the Board (and ultimately the Court of Veterans Appeals and this court) to rule on the merits of Ledford’s APA and constitutional challenges might have been obviated.
 

 Ledford argues that Congress intended the Court of Veterans Appeals to have the power to invalidate challenged regulations
 
 [9]
 
 and that the agency lacks such power. Led-ford opines that the legislative history from the VJRA supports his argument. This is indeed what the cited history states, but it does not speak to the question whether such a challenge needs to be raised at the agency level in order to preserve it at the Court of Veterans Appeals. The legislative history provides no basis for us to conclude that the doctrine of exhaustion of administrative remedies does not apply here. Because Led-ford’s APA and constitutional challenges have not been raised before the agency, the Court of Veterans Appeals did not err in declining to exercise jurisdiction over these challenges.
 

 We have considered Ledford’s remaining arguments, but find them to be unpersuasive.
 

 CONCLUSION
 

 The Court of Veterans Appeals did not err in dismissing that portion of Ledford’s appeal that sought to challenge the 1981 termination of his individual unemployability benefits because that issue was not decided by the Board, an NOD was not filed on that issue, and the constitutional and statutory challenges to that determination have not been presented to the agency for its consideration.' Accordingly, the decision of the Court of Veterans Appeals is
 

 AFFIRMED.
 

 [1]
 

 . 38 C.F.R. § 3.105(a) (1997) states in relevant part:
 

 [2]
 

 . The Board did however grant Ledford a slightly earlier effective date of March 5, 1990 based on its reconsideration of certain VA outpatient records.
 

 [3]
 

 . This characterization seems to have benefited Ledford, as a CUE claim may be filed after the statutory period for filing an appeal has run.
 
 See infra
 
 note 4.
 

 [4]
 

 . The government opines that while Ledford's challenges concerning the validity of the Circular can and should have been raised before the agency by an NOD in order to provide the Court of Veterans Appeals with jurisdiction over these challenges, his claim is nonetheless time barred except to the extent that it constitutes CUE under 38 C.F.R. § 3.105(a).
 
 See
 
 38 U.S.C. § 7105(b)(1) (1994) ("[Njotice of disagreement shall be filed within one year from the date of mailing of notice of the result of initial review or determination.”);
 
 id.
 
 § 7105(c) ("If no notice of disagreement is filed ... within the prescribed period, the action or determination shall become final and the claim will not thereafter be reopened or allowed, except as may otherwise be provided by regulations not inconsistent with this title.”). We express no view concerning whether Led-ford’s Circular validity claim is properly characterized as a CUE claim or to what extent his claim is barred by § 7105(b)(1), because resolution of these issues is not necessary to resolve the jurisdictional question before us.
 

 [5]
 

 . Ledford does not appeal the court's resolution of that issue to this court.
 

 [6]
 

 . "The Substantive Appeal should set out specific arguments relating to errors of fact or law made by the agency of original jurisdiction in reaching the determination, or determinations, being appealed. To the extent possible, the argument should be related to the specific items in the Statement of the Case_” 38 C.F.R. § 20.202 (1997);
 
 see also
 
 38 U.S.C. § 7105(d)(3) (1994).
 

 [7]
 

 .
 
 See Allied-General Nuclear Serv. v. United States,
 
 839 F.2d 1572, 1575 (Fed.Cir.1988) (“The exhaustion requirement is not, strictly speaking, a matter of jurisdiction.").
 

 [8]
 

 . The Court in
 
 Aircraft & Diesel
 
 noted that the Tax Court, previously referred to as the Board of Tax Appeals, is by statute "an independent agency in the Executive Branch of Government."
 
 Aircraft & Diesel,
 
 331 U.S. at 768 n. 27, 67 S.Ct. at 1501 n. 27 (citation of statute omitted).
 

 [9]
 

 . Ledford’s argument assumes that the Circular qualifies as a regulation. This assumption is relevant only to the merits of his APA claim, which are not before us, and concerning which we express no view.